
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 7, 2017

## STATE OF TENNESSEE v. ELTON KEITH MCCOMMON

**Appeal from the Circuit Court for Haywood County**
No. 7074      Clayburn Peeples, Judge

_____

### No. W2015-01228-CCA-R3-CD
_____

The defendant, Elton Keith McCommon, was indicted for two counts of aggravated assault, one count of reckless endangerment with a deadly weapon, one count of evading arrest, one count of driving under the influence, and one count of driving with a suspended or revoked license. Following trial, a jury found the defendant guilty of reckless endangerment with a deadly weapon, evading arrest, and driving with a suspended or revoked license. The trial court sentenced the defendant as a career offender and imposed an effective twelve-year sentence. On appeal, the defendant argues the evidence was insufficient to support his convictions for reckless endangerment and evading arrest. The defendant also challenges the trial court's evidentiary ruling regarding items found during a search incident to his arrest. Finally, the defendant disputes his status as a career offender. After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Tom W. Crider, Haywood County Public Defender; Rachele Scott-Gibson and J. Daniel Rogers, Assistant Haywood County Public Defenders (on appeal); and Michael Banks, Brownsville, Tennessee (at trial), for the appellant, Elton Keith McCommon.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald Campbell and Marc Murdaugh, Assistant District Attorney Generals, for the appellee, State of Tennessee.

# OPINION

## FACTS

On October 13, 2012, the defendant led police on a seven-mile, high-speed chase through Haywood County that resulted in his arrest. At trial, Sergeant Anthony Rankin of the Brownsville Police Department testified that he first came into contact with the defendant when the defendant's Chevrolet pickup truck sped across two lanes of traffic and swerved into Sergeant Rankin's lane of travel. Sergeant Rankin "was terrified," and immediately activated his blue lights and pursued the defendant. By activating his lights, Sergeant Rankin also activated his dashboard camera, thus documenting the entire high-speed chase. According to Sergeant Rankin, the defendant reached speeds of up to 117 miles per hour throughout the chase. Officers Gray and Carson also joined the pursuit of the defendant, capturing their involvement on dash-cam video as well. All three videos were played for the jury at trial.

The dash-cam videos show the defendant speeding down Highway 76, erratically driving through the Brownsville town square, and ultimately stopping seven miles later on the Highway 76 Bypass. Throughout the chase, the defendant is followed by three patrol cars, each with activated blue lights and sirens, and is seen weaving through traffic at over 100 miles per hour. At one point during the chase, the defendant almost hit Captain Barry Diebold, an off-duty officer with the Brownsville Police Department. Captain Diebold testified that the defendant's truck "appeared like it was airborne" as it sped towards his vehicle. In order to avoid being hit, Captain Diebold was forced off of the road.

After over five minutes of erratic and dangerous driving, the defendant finally stopped on the Highway 76 Bypass. When the defendant exited his vehicle, officers immediately noticed that he was naked from the waist down. Sergeant Rankin searched the defendant's truck but was unable to locate the defendant's shoes, pants, underwear, or socks. Instead, Sergeant Rankin found approximately $1,500.00 in cash, a purple vibrator in the floorboard, and a package of batteries that had been ripped open and scattered throughout the truck. Additionally, the interior of the truck was covered in urine.

Sergeant Rankin stated that the defendant was uncooperative and "just rambling off the top of his head." The defendant told Sergeant Rankin he had been "binging cocaine" for two days. Officers were unable to conduct field sobriety tests because of the defendant's mental and physical state. Sergeant Rankin also explained that officers struggled to handcuff the defendant and the defendant likely suffered injuries to his

knees, genitalia, shins, and feet as a result. Sergeant Rankin, however, did not notice an injury to the defendant's forehead.

In a subsequent interview and at trial, the defendant presented an alternative explanation for the high-speed chase. The defendant testified he had just been robbed by gang members at a nearby Taco Bell. During the robbery, he was hit on the forehead with a .38 caliber pistol and beaten. His assailants pulled off his shoes and pants before stealing his wallet, keys, cell phone, and clothes. Gunshots were fired before the assailants drove away. The defendant, however, was able to escape, start his truck using a spare key, and chase a car full of gang members who robbed him. As the defendant sped towards the City of Brownsville in pursuit of the fleeing robbers, Sergeant Rankin, Officer Gray, and Officer Carson intercepted him. The defendant stated he did not notice the officers behind him until mid-way through the chase, but he intended to get police to help him catch the robbers by getting their attention. The defendant stated once he lost sight of the robbers' vehicle, he pulled over to talk to the police. Though the defendant admitted he endangered others and "could have hurt some people," he denied stating he was "binging cocaine" at the time of his arrest.

During their testimony, both Sergeant Rankin and Captain Diebold testified that no other vehicles, absent the defendant, were involved in the chase and that the dash-cam videos reflect the same. Furthermore, Sergeant Rankin testified that the Brownsville Police Department did not receive any reports of a robbery or gunshots at the Taco Bell where the defendant was allegedly attacked.

The jury convicted the defendant of felony reckless endangerment, felony evading arrest, and driving with a suspended or revoked license. At the sentencing hearing, the court sentenced the defendant, as a career offender, to a term of twelve years for evading arrest, six years for reckless endangerment, and five months and twenty-nine days for driving on a revoked license. The court ordered the three sentences to be run concurrently to one another, resulting in an effective twelve-year sentence. This appeal followed.

## ANALYSIS

On appeal, the defendant presents three arguments for our review. First, he challenges the sufficiency of the evidence supporting his convictions for reckless endangerment and evading arrest. The defendant next contends the trial court erred in permitting evidence of the items found in the defendant's truck at the time of his arrest. Finally, the defendant challenges the trial court's finding that he was a career offender. The State asserts sufficient evidence exists to support the defendant's convictions and the

trial court did not err as to its evidentiary rulings or the defendant's status as a career offender. Discerning no error, we affirm the judgments of the trial court.

## I.     Sufficiency of the Evidence

The defendant argues that the evidence produced at trial is insufficient to support his convictions for reckless endangerment and evading arrest. When the sufficiency of the evidence is challenged, appellate courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). Appellate courts "do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state." *State v. Adams*, 45 S.W.3d 46, 55 (Tenn. Crim. App. 2000) (citing *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978)). As a result, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State." *State v. Thorpe*, 463 S.W.3d 851, 864 (Tenn. 2015) (quoting *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992)).

Further, "[a] jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). The Tennessee Supreme Court explained as follows:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 370 S.W.2d 523 (1963)). On appeal, "conflicts in the testimony are resolved in favor of the verdict of the jury and the judgment of the trial court, and the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that

may be drawn therefrom." *Tuggle*, 639 S.W.2d at 914 (citing *Cabbage*, 571 S.W.2d 832).

As charged in the indictment, reckless endangerment is committed when the defendant "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). If committed with a deadly weapon, in this case, the defendant's truck, the defendant is guilty of a Class E felony. Tenn. Code Ann. §§ 39-13-103(b)(2); 39-11-106(a)(5)(B). One "acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of, but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tenn. Code Ann. § 39-11-106(a)(31). Further, "[t]he risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." *Id.*

Regarding the defendant's conviction for felony evading arrest, Tennessee Code Annotated § 39-13-103(a) makes it "unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1). A defendant is guilty of a D felony "[i]f the flight or attempt to elude creates a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties." Tenn. Code Ann. § 39-16-603(b)(3)(B).

The defendant contends the State failed to prove the requisite mental state for each felony offense arguing, in part, that the jury "was not at liberty to reject his explanation" for the chase. He argues his testimony, that "he had been beaten, stripped and robbed by armed assailants and was trying to attract the attention of police while keeping sight of the robbers," negates the required mental states for each felony conviction. The State contends that "the jury was entitled to reject the defendant's explanation and credibility determinations are the sole prerogative of the jury." We agree with the State. The record reflects the State offered sufficient evidence disputing the alleged robbery and the defendant's explanation of events. Further, as noted by the State, this Court presumes any conflicts in the testimony presented at trial were resolved by the jury in reaching their verdict. *See Tuggle*, 639 S.W.2d at 914.

Before reaching its verdict, the jury viewed three dash-cam videos of the seven-mile, high-speed chase. The videos show the defendant being followed for miles by three officers, each with activated blue lights and sirens. Additionally, the videos show the defendant placing other motorists' lives in danger by weaving through vehicles and

- 5 -

crossing into oncoming lanes of traffic. Sergeant Rankin and Captain Diebold testified that the defendant's driving caused them to take evasive action to avoid being hit and made them fear for their safety. Sergeant Rankin testified that the defendant reached speeds of up to 117 miles per hour during the chase. Additionally, both Sergeant Rankin and Captain Diebold testified that the defendant was not chasing a car full of gang members and the dash-cam videos reflect the same. Sergeant Rankin further testified that upon arrest, the defendant was uncooperative and naked from the waist down. The defendant also told Sergeant Rankin he had been "binging cocaine" for two days prior to the chase.

The jury then heard the defendant testify regarding his version of events which led to the high-speed chase and greatly differed from the testimony of both Sergeant Rankin and Captain Diebold. Specifically, the defendant explained that his nakedness and dangerous driving were the result of being attacked and robbed at a nearby Taco Bell. After being robbed, the defendant sped towards his alleged robbers who he claimed were ahead of him during the police chase. The defendant stated his attackers took his clothing during the robbery, which explained why he was naked upon arrest. Based on the verdicts, the jury weighed the defendant's testimony, that he was naked from the robbery and attempting to catch his alleged assailants, in relation to the other evidence presented at trial and reconciled the evidence in favor of the State. This Court will not reweigh the evidence. *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011). Furthermore, this Court presumes that any conflicts in the defendant's and Sergeant Rankin and Captain Diebold's testimony were resolved by the jury in reaching their verdict. *See State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008); *Adams*, 45 S.W.3d at 55.

Based upon the evidence outlined above, the State established the essential elements of both reckless endangerment and evading arrest as charged in the indictment by showing that the defendant led police on a seven-mile, high-speed chase which put police officers' and other motorists' lives "in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). The record also supports the jury's finding that the defendant intentionally failed to stop when officers activated blue lights and sirens, and his failure to stop placed the officers and other motorists in danger. Tenn. Code Ann. § 39-16-603(b)(1), (b)(3)(B). Accordingly, after reviewing the evidence in the light most favorable to the prosecution, we conclude that sufficient evidence exists to support the defendant's convictions for reckless endangerment and evading arrest. The judgment of the trial court is affirmed.

## II.    *Prejudicial Evidence*

Next, the defendant contends that the trial court abused its discretion by admitting evidence of a purple vibrator found in the floorboard of the defendant's truck upon arrest

and the State's reliance on the same throughout trial. The defendant claims evidence of "the sex toy and urine" only served "to excite the prurient interest of the jury and to inflame their feelings of disgust and revulsion toward" him. After our review of the record, we again respectfully disagree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "Evidence that is not relevant to prove some part of the prosecution's case should not be admitted solely to inflame the jury and prejudice the defendant." *State v. Jordan*, 325 S.W.3d 1, 85 (Tenn. 2010). Further, "evidence which is unfairly prejudicial is that which has an undue tendency to suggest a decision on an improper basis, frequently, though not necessarily, an emotional one." *State v. March*, 395 S.W.3d 738, 774 (Tenn. Crim. App. 2011) (citing *State v. Banks,* 564 S.W.2d 947, 951 (Tenn. 1978)).

As discussed supra, when Sergeant Rankin arrested the defendant, the defendant was naked from the waist down and stated he had been "binging cocaine." Upon searching the defendant's truck, Sergeant Rankin found a vibrator in the floorboard and a package of batteries scattered throughout. The trial court overruled the defendant's initial objection to this evidence. When the defendant later testified, the prosecutor asked the defendant several questions regarding the vibrator and batteries found in the defendant's truck which outlined the State's theory of the case. The following exchange occurred:

> Q: Now, the fact that you were naked didn't have anything to do with anybody pulling your clothes off, did it?
> A: Yes, sir. It did.
> Q: You were changing your batteries out on your dildo when they pulled you over?
> A: No. They pulled them out searching my truck. They found those.
> Q: He said it was in the passenger floorboard open and the batteries were scattered?
> A: I don't care where these crooks slung my stuff.
> Q: You were riding down the streets of Brownsville with it stuck up your prostate trying to get a rise off of it and that's the reason you were driving like this evading the officers. You were trying to get off before you stopped, weren't you?
> A: I traded my clothes and my wallet and my money for everything.
> Q: Did they throw the dildo at you when they took your clothes? Where did it come from?
> A: Out of the compartment where it was put away.
> Q: You have no explanation why there's urine all over your cab?

A: I have no explanation why any of that was strewed all over my cab.
Q: Was your orgasm worth all this - - endangering all these peoples' lives?

After the last exchange, the defendant objected and the trial court sustained his objection. Though the trial court limited the State's questioning of the defendant to some degree on cross-examination, it is clear that the State's theory of the case relied on evidence of the contents of the interior of the defendant's truck and the defendant's use of the same. Specifically, during closing, the State argued, "[the defendant] was high on cocaine, getting sexual gratification. He didn't care what was going on around him. He was not going to pull over until he was ready to. He didn't care who he ran off the road or who he injured."

Further, the State presented video evidence and testimony establishing that the defendant led police on a dangerous, high-speed chase for seven miles. When the defendant eventually stopped, he was naked from the waist down and officers found a vibrator and an open package of batteries inside the truck. The truck was also covered in urine. Though the jury heard testimony from the defendant wherein he explained that he had been robbed, stripped, and was in pursuit of his assailants at the time of his arrest, the jury also heard from both Sergeant Rankin and Captain Diebold that no other cars were involved in the high-speed chase of the defendant and that no reports of a robbery were made to the police department. As such, the defendant's argument, that he presented "undisputed testimony" of an alleged robbery, again fails. Accordingly, the record indicates the trial court properly determined that Sergeant Rankin's testimony regarding the search of the defendant's truck and the State's reliance on the same was relevant to the State's theory of the case. Tenn. R. Evid. 401. The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with that discretion absent a clear showing of abuse of discretion. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997). Based upon the evidence presented above, the defendant's relevance argument is without merit.

### III. *Career Offender Status*

Finally, the defendant takes issue with the trial court's finding that he was a career offender. This Court reviews within-range sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W. 3d 682, 707 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). The party appealing a sentence bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40–35–401, Sentencing Comm'n Cmts. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

The trial court may sentence a defendant as a career offender, when it finds beyond a reasonable doubt that the defendant has received "[a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony." Tenn. Code Ann. § 40-35-108 (a)(3), (c). Prior convictions committed "within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions." Tenn. Code Ann. § 40-35-108 (b)(4). However, the so-called 24-hour rule does not apply to "convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury or threatened bodily injury to the victim or victims or convictions for the offense of aggravated burglary under § 39-14-403." *Id.* Further, prior convictions include out-of-state convictions cognizable in Tennessee. Tenn. Code Ann. § 40-35-108 (b)(5).

Though the defendant argues the trial court erred in sentencing him as a career offender, the record shows otherwise. Initially we note, and as argued by the State, the defendant has waived the issue of his status as a career offender as the certified copies of his prior convictions, though stipulated to and introduced during the sentencing hearing, are not a part of the appellate record. *See State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988)("Where . . . the record is incomplete, and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which a party relies, this Court is precluded from considering the issue."). However, despite the possible waiver, the record shows the defendant had the requisite number of prior convictions to sustain the trial court's imposition of career offender status.

It is undisputed that the defendant was found guilty of evading arrest and reckless endangerment, Class D and Class E felony offenses, respectively. As such, in order to be classified as a career offender, the State had to show the defendant carried at least six prior felony convictions. Tenn. Code Ann. § 40-35-108 (a)(3), (c). The State met this burden. The presentence report contained in the appellate record lists at least six prior Shelby County convictions, including aggravated assault and burglary, along with prior convictions in Tipton County and the State of Mississippi. Furthermore, the defendant stipulated to the certified copies of the prior convictions at the sentencing hearing and never actually objected to the career offender status when asked by the trial court. As such, the record supports the trial court's finding of career offender status and the defendant is not entitled to relief as to this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE